UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WELLS FARGO BANK, N.A.,

    **Plaintiff,**

v.                                    **Case No: 8:13-cv-1738-T-27MAP**

OSPREY COMMERCE CENTER, LLC,
*et al.,*

    **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion to Strike Defendants' Jury Trial Demand and Affirmative Defenses and Incorporated Memorandum of Law, Alternative Motion for More Definite Statement (Dkt. 21), and Defendants' response in opposition (Dkt. 28). Motions to strike are generally disfavored, however, under the circumstances here Defendants have contractually waived a jury trial as well as any defenses to Plaintiff's claims arising before the execution of various agreements. Upon consideration, Plaintiff's Motion is GRANTED.

Plaintiff Wells Fargo Bank, N.A. brings this action alleging claims arising out of guaranty agreements provided by Defendants.[1] Wells Fargo seeks to enforce the guaranties by Defendants

---

[1] There are a number of agreements pertinent to Plaintiff's Complaint and this Motion. In the main category of documents are the Guaranty Agreements executed by Defendants. Each defendant executed a guaranty in April 2011 (Dkts. 1-3, 1-4, 1-5, 1-6, 1-7, 1-8). In addition, in April 2012, Defendants Osprey Commerce, Castille, and Cattleridge executed Amended and Restated Guaranty Agreements (Dkts. 1-10, 1-11, 1-12). In the second category are loan documents. This includes the April 2011 Second Amended and Restated Credit Facility Agreement ("2011 Credit Agreement") between Wells Fargo (the lender) and Osprey, S.A., Ltd. (the borrower) (Dkt. 1-1). All sixteen defendants joined in the 2011 Credit Agreement (*id.*). In April 2012, Wells Fargo and Osprey, S.A., Ltd. entered into a Loan Modification Agreement (Dkt. 1-9). All of the Defendants except Michael Biber and Michael J. Biber Trust joined in this Loan Modification (*id.*).

of a $60 million loan by Wells Fargo to Osprey, S.A., Ltd. which is currently in default (*see* Dkt. 1, ¶ 24, 33-41, 50). Each count of the Complaint seeks to recover from Defendants for their failure to pay Wells Fargo pursuant to the Guaranty Agreements (Dkt. 1, Counts I-VI). Defendants answered the Complaint demanding a jury trial and asserting fifteen affirmative defenses (Dkt. 7).

Plaintiff moves to strike Defendants' jury trial demand as well as all fifteen of their affirmative defenses contending that they have contractually waived the right to a jury trial and all defenses to this action that arose prior to April 30, 2012.[2] Plaintiff also moves to strike Defendants' affirmative defenses because of pleading deficiencies. Alternatively, Plaintiff requests a more definite statement of the affirmative defenses.

Defendants respond that it would be premature to strike their demand for jury trial because they contend the loan documents are unconscionable. As to the provision purportedly waiving all defenses, Defendants contend no authority exists to uphold such a vague and broad waiver. Defendants, however, voluntarily withdraw the Ninth through the Fourteenth affirmative defenses (Dkt. 28 at 12).

## STANDARD

A court may "strike from a pleading" any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of this Rule is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Slone v. Judd*, No. 8:09-cv-1175-T-27TGW, 2009 WL 5214984, at *1 (M.D. Fla. Dec. 29, 2009) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa.2002)). Motions to strike are

---

[2] With the exception of Michael Biber and Michael J. Biber Trust (the "Biber Guarantors"), whom Plaintiff contends have waived all defenses arising prior to April 30, 2011.

generally disfavored, *id.*, and are considered to be a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir.1962). Nevertheless, district courts have broad discretion in determining whether to grant a motion to strike. *Slone*, 2009 WL 5214984, at *1 (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla.1976)).

An affirmative defense is insufficient as a matter of law and should be stricken "if it appears to a certainty that the plaintiff would succeed despite any set of facts which could be proved in support of the defense." *Equal Employment Opportunity Comm'n v. First Nat. Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) (citing 2A Moore's Federal Practice P 8.27(3), at 8251 (2d Ed. 1979)); *Wlodynski v. Ryland Homes of Florida Realty Corp.*, 808-CV-00361-JDW-MAP, 2008 WL 2783148, *1 (M.D. Fla. July 17, 2008) ("[A] court may strike an affirmative defense if the defense is 'insufficient as a matter of law.'") (quoting *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002)).

## DISCUSSION

### *Jury Trial Waiver*

Plaintiff contends Defendants waived their right to a jury trial pursuant to the jury trial waiver in the guaranty agreements. Federal Rule of Civil Procedure 39 provides that when a jury trial has been demanded, "[t]he trial on all issues so demanded must be made by jury unless: . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury." Fed. R. Civ. P. 39(a)(2). "A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006). Generally, "[i]n making this assessment, courts consider the

conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication

of the party challenging the waiver, and whether the terms of the contract were negotiable." *Id.* at

824. No single factor is conclusive; rather, the question is whether, "in light of all the circumstances,

the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair."*Allyn*

*v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004). "The right to trial by

jury is fundamental, and this Court 'indulges every reasonable presumption against waiver.'" *Mega*

*Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1403 (11th Cir. 2009) (quoting *LaMarca v.*

*Turner*, 995 F.2d 1526, 1544 (11th Cir.1993)).[3]

Applying these principles, which Defendants do not challenge, it is apparent that they

knowingly and voluntarily waived their right to a jury trial. Each guaranty agreement, signed by each

defendant, provides:

> **WAIVER OF RIGHT TO TRIAL BY JURY.** EACH PARTY TO THIS
> GUARANTY, AND BY ITS ACCEPTANCE HEREOF, LENDER, HEREBY
> EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM,
> DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THE LOAN
> DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR
> FUTURE MODIFICATION THEREOF OR (B) IN ANY WAY CONNECTED
> WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES
> HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS
> (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT,
> DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN
> CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO
> OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER
> ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR
> OTHERWISE; AND EACH PARTY AND LENDER MAY FILE AN ORIGINAL
> COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS
> WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO AND
> LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

---

[3] The Eleventh Circuit has observed that there is a split in authority as to which party bears the burden on a
motion to strike a demand for a jury trial, but has not yet resolved this question. *See Bakrac, Inc.*, 164 Fed. App'x.
at 824 n.1.

(Dkt. 1-8, ¶ 20 (emphasis in original); Dkt. 1-3, ¶ 19; Dkt. 1-4, ¶ 19; Dkt. 1-5, ¶ 19; Dkt. 1-6, ¶ 20; Dkt. 1-7, ¶ 21; Dkt. 1-10, ¶ 19; Dkt. 1-11,¶ 19; Dkt. 1-12, ¶ 19). The jury trial waiver is conspicuous, in uppercase font, in a separate paragraph, with a bold-face heading, and is in the last paragraph before the signature page. The provisions are straightforward and understandable. In addition, each defendant executed additional agreements including jury waiver provisions.[4] There is no indication that the parties had unequal bargaining power or that the terms of the agreements were not negotiable. And the claims in this action fall within the scope of the waiver. Defendants, therefore, have waived their right to a jury trial.

Although Defendants assert as a defense that the guaranties are unconscionable as a whole, they do not assert that the jury waiver itself is unconscionable and cite no authority or evidence to support their contention. *See Allyn*, 347 F. Supp. 2d at 1255 (holding that "fraud in the inducement going to the contract does not automatically vitiate the validity of a discrete jury trial waiver provision in the contract itself").

*Waiver of Affirmative Defenses*

Plaintiff's motion to strike Defendants' affirmative defenses is based mainly on the "Guarantor's Waivers" provision included in the Guaranty Agreements. Plaintiff relies on the following language: "Guarantor further expressly waives to the extent permitted by law any and all rights and defenses, including without limitation any rights of subrogration, reimbursement, indemnification and contribution" (*see, e.g.*, Dkt. 1-8 at ¶ 4). Plaintiff also relies on the "Enforceability" provision of the agreements which provides:

---

[4] The 2011 Credit Agreement, which was joined in by all Defendants, also included a similar conspicuous jury waiver (Dkt. 1-1 at 36). And Defendants Osprey Commerce, Castille, and Cattleridge executed two guaranty agreements, in 2011 and 2012, each containing the same provision.

"Guarantor hereby acknowledges that: (a) the obligations undertaken by Guarantor in this Guaranty are complex in nature, and (b) numerous possible defenses to the enforceability of these obligations may presently exist and/or may arise hereafter, and (c) as part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and (d) Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waving such defenses. *Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.*

(*See, e.g., id.* at ¶ 18 (emphasis added)). Finally, Plaintiff contends that Defendants agreed to release Plaintiff from all claims and defenses in the 2011 Credit Agreement (Dkt. 1-1, ¶ 7.11) and that all Defendants except the Biber Guarantors again agreed to release Plaintiff from all claims and defenses in the 2012 Loan Modification Agreement (Dkt. 1-9, ¶ 7). As such, Plaintiff asserts that all Defendants have waived all defenses that arose prior to April 30, 2011, and that with the exception of the Biber Guarantors, all Defendants have waived any defenses that arose prior to April 30, 2012. Defendants assert that the waiver provisions purport to waive unknown defenses that might arise in the future and thus are not enforceable.

"It is established law in this state that a contract must be applied as written, absent an ambiguity or some illegality. That rule is clearly stated in *Medical Center Health Plan v. Brick,* 572 So. 2d 548, 551 (Fla. 1st DCA 1990), as follows: A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract. Courts cannot, by construction, rewrite the clear and unambiguous terms of a voluntary contract." *Brooks v. Green,* 993 So. 2d 58,

61 (Fla. 1st DCA 2008); *see also WrestleReunion, LLC v. Live Nation Television Holdings, Inc.,* 8:07CV2093-JDW-MAP, 2009 WL 2473686, *7 (M.D. Fla. Aug. 11, 2009). "'This principle applies even where the terms of the contract are harsh or out of the ordinary.'" *Florida Dep't of Highway Safety & Motor Vehicles v. Nat'l Safety Comm'n, Inc.,* 75 So. 3d 298, 304 (Fla. 1st DCA 2011) (quoting *St. Johns Inv. Mgmt. Co. v. Albaneze,* 22 So. 3d 728, 732 (Fla. 1st DCA 2009)).

Florida law defines "'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas,* 896 So. 2d 707, 711 (Fla. 2005) (citing *Major League Baseball v. Morsani,* 790 So.2d 1071, 1077 n.12 (Fla. 2001)). Waiver may be express or implied. *Taylor v. Kenco Chem. & Mfg. Corp.,* 465 So. 2d 581, 587 (Fla. 1st DCA1985).

The parties do not suggest any ambiguity in the language of the waivers and releases in the various agreements executed by Defendants. Plaintiff, however, purports to limit the timeframe to which the waivers apply, up to the date Defendants signed the agreements: April 2011 for the Biber Guarantors and April 2012 for all other Defendants. Defendants seize on this to argue that the waiver provisions are unenforceable as overbroad because they purport to waive defenses that might arise in the future. Although the language varies between the Guaranty Agreements, the 2011 Credit Agreement, and the 2012 Loan Modification Agreement, each has language that purports to waive and/or release defenses existing at that time or which may arise in the future.

The waivers in the guaranties, as well as the other agreements, are express and waive Defendants' right to assert defenses related to the loan/guaranties. Paragraph four of each guaranty provides: "Guarantor further expressly waives to the extent permitted by law any and *all rights and defenses,* including without limitation any rights of subrogation, reimbursement, indemnification

and contribution" (*see, e.g.*, Dkt. 1-8 at ¶ 4) (emphasis added).[5]

Although the precise nature of a future defense may have been unknown to the Defendants when they executed the agreements, that they would have the right to raise defenses to claims related to these agreements was certainly known to Defendants. By signing the guaranty agreements, Defendants expressly acknowledged that they waived the right to assert defenses, even those that may arise after execution of the agreements. Indeed, the "Enforceability" provision of the agreements expressly provides in pertinent part: "Guarantor hereby acknowledges that: . . . (b) numerous possible defenses to the enforceability of these obligations may presently exists and/or may arise hereafter," and the Guarantors expressly acknowledged that Plaintiff was induced to enter into the agreements "in material reliance upon the presumed full enforceability thereof" (*see, e.g.*, Dkt. 1-4, ¶ 18). Defendants voluntarily and intentionally waived their right to raise defenses to Plaintiff's claims. The affirmative defenses, therefore, are insufficient as a matter of law.

Defendants have not provided any convincing authority to support their position that a waiver of future defenses is unenforceable. Nevertheless, because Plaintiff only moves to strike Defendants' affirmative defenses to the extent they arose before April 2011 (Biber Guarantors) and April 2012 (all other defendants), the affirmative defenses will be stricken to that extent.

---

[5] In addition, the 2011 Credit Agreement, which was joined in by Defendants, provides: "Borrower and Guarantors . . . RELEASE Lender . . . from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation claims of fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown" (Dkt. 1-1, ¶ 7.11). And the 2012 Loan Modification Agreement provides: "Borrower . . . hereby fully releases and discharges Lender . . . of and from any and all claims, counterclaims, defenses, setoffs, demands, actions, causes of action and damages that Borrower or any other Releasor may have had, may now have, or may hereafter have" (Dkt. 1-9, ¶ 7).

Accordingly,

Plaintiff's Motion to Strike Defendants' Jury Trial Demand and Affirmative Defenses and Incorporated Memorandum of Law, Alternative Motion for More Definite Statement (Dkt. 21) is **GRANTED**. Defendants' jury demand is **STRICKEN**. Defendants' affirmative defenses are **STRICKEN** to the extent they arose before April 30, 2011 with respect to the Biber Guarantors and before April 30, 2012 with respect to all other Defendants. To the extent Defendants have affirmative defenses that arose after these dates, they may amend their affirmative defenses within **fourteen (14) days**.

**DONE AND ORDERED** this _25th_ day of March, 2014.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

9